UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALVOLINE, LLC, ET AL.,

    Plaintiffs,

    v.

FRANKS OIL KING, INC., ET AL.,

    Defendants.
_____/

Case No. 20-cv-10044

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [#18]**

**I. INTRODUCTION**

Plaintiffs Valvoline LLC and Valvoline Licensing and Intellectual Property LLC (collectively, "Plaintiffs") bring this motion for default judgment against Defendants Franks Oil King, Inc., d/b/a Frank's Oil King and/or as Quick Oil Auto Repair; Franks Oil Center, Inc. d/b/a Frank's Oil King and/or as Quick Oil Auto Repair, and Fadi Hachem a/k/a Frank Hachem (collectively, "Defendants"). *See* ECF No. 1. Plaintiffs request damages and a permanent injunction after Defendants failed to pay for motor oil delivery and continued to display a Valvoline Mark at their facilities after termination of the contract between the parties. Plaintiffs bring various federal and state claims, including trademark infringement, false advertising, and breach of contract.

Presently before the Court is Plaintiffs' Motion for Default Judgment, filed on May 20, 2020. ECF No. 56. Defendants have failed to file an answer or otherwise defend this matter. A hearing on Plaintiffs' Motion was held on October 21, 2020. For the reasons discussed herein, the Court will **GRANT** Plaintiffs' Motion [#18].

## II. FACTUAL BACKGROUND

Plaintiffs are producers and distributors of "premium-branded automotive, commercial and industrial lubricants and automotive chemicals," all offered under the broad Valvoline brand. ECF No. 1, PageID.3. Plaintiffs franchise various oil change facilities around the nation, including in Detroit, Michigan. *Id.* at PageID.4. With prior authorization and agreement, these facilities may utilize one of Valvoline's many registered U.S. trademarks, some of which are visually displayed within Plaintiffs' Complaint. *See id.* at PageID.4-5.

One of Valvoline's licensed distributors is Vesco Oil Corporation ("Vesco"). *Id.* at PageID.5. Plaintiffs state that Vesco and Defendant Frank's Oil King entered into an Equipment Loan Agreement ("Agreement") on April 3, 2017. ECF No. 5-1, PageID.34. The Agreement was signed by Defendant Hachem on behalf of Frank's Oil King. *Id.* The Agreement provided that Defendants would borrow certain equipment ("Equipment") from Vesco, including tanks, pumps, and hoses typically utilized by oil change facilities. *See id.* The Agreement also provided that failure to pay for products could result in termination of the Agreement and that, upon

2

termination, Defendants should make the Equipment available for pick up and return. ECF No. 1, PageID.6-7. Plaintiffs note that Vesco assigned both its rights under the Agreements and its title to the Equipment to Valvoline once the Agreement was signed. *Id.*

Plaintiffs allege that it delivered motor oil to Defendants on September 28, 2018, but that Defendants failed to pay the amount due provided on the invoice ("Invoice"). ECF No. 5-2, PageID.38. Additionally, Plaintiffs state that Defendants acquired another facility in 2019, Quick Oil Auto Repair, wherein they continued to use a Valvoline trademark without Plaintiffs' authorization. ECF No. 1, PageID.8. Photographs of the Defendants' facilities with signage containing the Valvoline marks are included within Plaintiffs' Complaint. *See id.* at PageID.8-9. While Plaintiffs sent various letters demanding Defendants cease their conduct and providing notice of the Agreement's termination, Plaintiffs state that the Defendants have failed to remove the Valvoline marks, pay the Invoice, return the Equipment, or otherwise respond in any manner. *Id.* at PageID.11.

Plaintiffs therefore commenced the instant action against Defendants on January 7, 2020. ECF No. 1. Plaintiffs bring ten claims against Defendants, including three counts under the Lanham Act and state law claims for unfair competition, breach of contract, unjust enrichment, and replevin. *Id.* Defendants

failed to file an answer or otherwise defend this matter in accordance with Federal Rule of Civil Procedure 12.

On April 6, 2020, Plaintiffs filed a request for the Clerk's Entry of Default against each Defendant. ECF No. 12. The Clerk entered a Default as to each Defendant on that same day. ECF Nos. 14, 15, 16. On May 20, 2020, Plaintiffs filed the present Motion, asking this Court to enter a default judgment in its favor and to find that Plaintiffs are entitled to (1) the return of the relevant Equipment in Defendants' possession; (2) damages; (3) reasonable expenses, including attorneys' fees; and (4) injunctive relief enjoining Defendants from using any Valvoline marks or otherwise taking action that would associate Defendants' business with the Valvoline brand. ECF No. 18, PageID.56-58. Defendants did not file a response to the Motion.

### III. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entry of judgment by default. In order to obtain judgment by default, the proponent must first request the Clerk's entry of default pursuant to Rule 55(a). Once a default has been entered by the Clerk, the plaintiff's well-pleaded allegations are deemed admitted. *See, e.g.*, *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *State Farm Fire and Casualty Company v. Piron*, No. 11-11375, 2011 WL 3625048, at *1 (E.D. Mich. July 28,

2011). The plaintiff may then file for default judgment by the Clerk or by the court. FED. R. CIV. P. 55(b).

When the plaintiff's complaint alleges damages for a sum certain, the Clerk "on plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing." FED. R. CIV. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). A default judgment may be entered without a hearing unless it is necessary to determine the amount of monetary damages. *Id.* The court must exercise "sound judicial discretion" when determining whether to enter the default judgment. CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2685 (3d ed. 1988); *see also Applebaum v. Target Corporation*, No. 11-cv-15035, 2015 WL 13050014, at *1 (E.D. Mich. Sept. 10, 2015); *Piron*, 2013 WL 1843965, at *2.

## IV. DISCUSSION

### A. Defendant Hachem's Personal Liability

As an initial matter, this Court must address the issue of personal liability for the individual Defendant Hachem. In breach of contract claims, for example, a plaintiff must plead allegations sufficient to establish entitlement to pierce the corporate veil and hold an individual personally liable for breach of the corporate

defendant's contract. *See Dimensional Tech. Int'l*, No. 07-CV-14232, 2010 WL 726740, at *3. "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentally of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Id.* (quoting *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007)).

During the hearing on this matter, Plaintiffs conceded that its Complaint did not contain sufficient allegations to pierce the corporate veil or establish Defendant Hachem's personal liability on any of the claims. The Court agrees with Plaintiffs' concession, as Plaintiffs' allegations are devoid of any detail that might establish that Defendant Hachem utilized Frank's Oil King or Quick Oil Auto Repair as corporate instrumentalities of his personal wrongdoing. Without these allegations, the Court could not find a basis to disregard the corporate entity and hold Hachem personally liable for the claims in the instant matter. *Compare with Dimensional Tech. Int'l*, No. 07-CV-14232, 2010 WL 726740, at *4.

Accordingly, only the Defendant corporate entities, Frank's Oil King and Quick Oil Auto Repair, will be held jointly and severally liable on the Counts discussed below.

### B. Infringement and Unfair Competition Claims (Counts I – IV)

Upon consideration of the Plaintiffs' factual allegations and claims, the Court concludes that Plaintiffs have established that Defendants unlawfully utilized the

Valvoline marks at the oil change facilities in question. Judges in this District have found that claims under the Lanham Act, including those for trademark infringement and false designation of origin, as well as claims for unfair competition under Michigan common law, are all "examined using the same factors, with the likelihood of confusion being the touchstone of the claims." *Advance Magazine Publishers, Inc. v. Tinsley*, No. 318CV13575RHCSDD, 2019 WL 1285089, at *2 (E.D. Mich. Mar. 20, 2019) (citing *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 604-05 (6th Cir. 1991)). In the likelihood of confusion analysis, the Sixth Circuit provides certain factors a court may consider, including:

> (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product line.

*Audi AG v. D'Amato*, 469 F.3d 534, 542-43 (6th Cir. 2006). A court need not consider all of the factors; it simply must consider the "ultimate question . . . whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 793 (6th Cir. 2004) (quoting *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)) (emphasis omitted).

Here, the facts in the Complaint clearly establish that there is a high likelihood that consumers could be led to believe that Valvoline services and products are offered at both the Frank's Oil King and Quick Oil Auto Repair facilities. Many of

Plaintiffs' registered trademarks have achieved incontestability status, which provides the "benefit of the strength accorded to a descriptive mark with a secondary meaning." *FenF, LLC v. Yogabody Nats., LLC*, No. 16-13483, 2017 WL 4841440, at *2 (E.D. Mich. Oct. 26, 2017) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997)) (internal citations omitted).

As in *FenF*, Plaintiffs' marks have "acquired value and name-brand recognition" and are meant to represent a certain caliber of goods and services in the automotive oil and repair space. *Id.* The record indicates that Defendants are clearly displaying a Valvoline mark and advertising Valvoline services on their facility storefront and signage without authorization by Plaintiffs. Defendants, therefore, have been able to reap the benefits of an unpermitted affiliation with Valvoline, especially since Defendants "offer the exact same goods and services through their oil change facilities" as Plaintiffs. ECF No. 58, PageID.70.

Given these facts, Plaintiffs have established that Defendants' "improper use constitutes trademark infringement and is likely to confuse and mislead consumers" into falsely believing the parties are affiliated. *FenF, LLC*, No. 16-13483, 2017 WL 4841440, at *2. Additionally, Plaintiffs represented at the hearing that Defendants have still failed to remove the Valvoline marks from its storefronts as of October 20, 2020.

Accordingly, the record supports a finding of likely confusion sufficient to hold the corporate Defendants liable for willful trademark infringement, false advertising and false designation of origin, and unfair competition under the Lanham Act, as well as unfair competition under Michigan common law. 15 U.S.C. §§ 1114, 1125(a)(1)(A)-(B).

### C. Contract and Quasi-Contract Claims (Counts V – X)

Upon review of the record, the Court also concludes that Plaintiffs have established that Defendants are in default of the April 2017 Equipment Loan Agreement and failed to pay for prior products and services rendered by Plaintiffs. For the breach of contract claims, a plaintiff is required to show the existence of a valid contract, a breach by the defendants, and resulting damage as a proximate result of the breach. *See Dimensional Tech. Int'l, Inc. v. FA Kellner Software*, No. 07-CV-14232, 2010 WL 726740, at *3 (E.D. Mich. Feb. 24, 2010).

Plaintiffs' contract and quasi-contract claims are based on two documents: (1) the 2017 Agreement, and (2) the Invoice for delivery of 151 gallons of Valvoline motor oil. ECF No. 1, PageID.6-7. The Court finds that these two documents established valid contracts between the Plaintiffs and the corporate Defendants. Because express agreements govern the instant matter, the Court does not need to imply a contract in equity for Plaintiffs' alternate unjust enrichment claims. *Dimensional Tech. Int'l*, No. 07-CV-14232, 2010 WL 726740, at *4 ("Because the

Court finds the allegations in the complaint sufficiently allege the existence of a contract covering the subject matter of the unjust enrichment claim, the Court will deny [the plaintiff's] claim for unjust enrichment."). Counts VIII and IV are therefore denied.

As for the first breach of contract claim in Count V, the Agreement provided that failure to pay for provided equipment or services could result in Plaintiffs' termination of the Agreement. ECF No. 5-1, PageID.35. Pursuant to the terms of the Agreement, Defendant Frank's Oil King also agreed that:

> upon termination of this Agreement, or a breach of any of its provisions by [Frank's Oil King], [Frank's Oil King] refuses or is unable to return the Equipment to [Valvoline], [Valvoline] is authorized to take any reasonable action and pay any reasonable expenses in order to regain possession of the Equipment, including legal fees and costs in obtaining possession and/or removal and storage, and all such costs and expenses shall be added to the obligation due from [Frank's Oil King] and shall be payable to [Valvoline] upon demand.

*Id.* at PageID.34.

Plaintiffs' second breach of contract claim in Count VI concerns Defendants' receipt of Valvoline's motor oil, which was recorded on the Invoice and required a payment of $1,274.44 to Plaintiffs by October 28, 2018. ECF No. 1, PageID.7. The Invoice, and Defendants' failure to pay the balance, also provides the facts necessary to establish Plaintiffs' claim in Count VII for action on account. *See Fisher Sand & Gravel Co. v. Neal A. Sweebe, Inc.*, 494 Mich. 543, 557, 837 N.W.2d 244, 252 (2013) (finding that claims for action on account arise "where the parties have conducted a

series of transactions for which a balance remains to be paid.") (additional citation omitted).

Plaintiffs state that a letter was sent on March 6, 2019 demanding payment for the amount owed on the Invoice, but that the letter went unanswered. *Id.* Plaintiffs subsequently sent Defendants a notice on June 7, 2019 informing Defendants that the Agreement had been terminated and that Plaintiffs sought to pick up the Equipment. *Id.* at PageID.10. Not receiving any responses, Plaintiffs sent at least four sets of letters to Defendants notifying them of their obligations to pay and return the Equipment. *Id.* at PageID.11.

As of the writing of this Order, Defendants have not paid the sum due to Plaintiffs as recorded by the 2018 Invoice. Defendants have also failed to return the Equipment as required under the Agreement and are therefore unlawfully detaining goods belonging to Plaintiffs. *See Synthes Spine Co., L.P. v. Calvert*, 270 F. Supp. 2d 939, 942 (E.D. Mich. 2003) (noting that plaintiffs have a replevin claim if they "have a right to possess goods or chattels which the defendant has unlawfully taken or detained and have suffered damages.") (internal citations omitted). Thus, the record supports a finding of liability for breach of contract, action on account, and replevin.

### D. Permanent Injunctive Relief

Plaintiffs also seek injunctive relief in order to enjoin Defendants from displaying Plaintiffs' marks at the Defendants' facilities. ECF No. 18, PageID.77.

11

The Court finds that Plaintiffs are entitled to this relief. Courts within this District have recognized that injunctive relief by way of a default judgment is available, especially in cases like this one, where Defendants have had notice of the proceedings. *See, e.g., Domino's Pizza Franchising, LLC v. VTM Pizza, Inc.*, No. 15-13312, 2015 WL 9500791, at *2 (E.D. Mich. Dec. 31, 2015). A court may grant a trademark owner permanent injunctive relief pursuant to the Lanham Act. 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010) (quotation omitted).

As to the first factor, irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). Once there is a showing of infringement, a specific finding of likelihood of entry or irreparable harm is thus not required for injunctive relief in a trademark infringement case. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). Here, Plaintiffs have shown that they will suffer irreparable harm if

12

an injunction is not issued enjoining Defendants from continuing to use Valvoline's trademarks at the designated facilities. ECF No. 18, PageID.79.

The second factor is also satisfied. The Sixth Circuit has held that where there is potential for future harm from infringement, there is no adequate remedy at law. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Here, there is potential for future harm from infringement because Defendants are continuing their infringing activities. *See id.* at PageID.80.

As to the third factor, the potential harm to Plaintiffs outweighs any harm that Defendants may suffer. Notably, Defendants do not face hardship in complying with their obligations under the April 2017 Agreement. *Audi*, 469 F.3d at 550. Plaintiffs, however, face hardship from potential customer confusion and damage to Plaintiffs' reputation and goodwill. ECF No. 18, PageID.80.

Finally, the Court finds that it is in the public's interest to issue injunctive relief to prevent customers from being misled by Defendants' continued unlawful use of Valvoline's trademarks. *Audi*, 469 F.3d at 550. As provided in the Complaint, and thereby admitted when Defendants defaulted, the continued use of Valvoline's marks is likely to "have deceived and/or have the capacity to deceive a substantial segment of customers, who are likely to believe that the [f]acility providing the vehicle maintenance services is authorized, licensed, and approved by Valvoline." ECF No. 12, PageID.74.

Accordingly, the Court will enter judgment in Plaintiffs' favor for Defendants to be immediately and fully enjoined from using, displaying, or otherwise associating with the Valvoline brand and trademarks at their facilities.

### E. Award of Expenses

Finally, Plaintiffs seek an award of reasonable attorneys' fees and costs. ECF No. 18, PageID.82. "The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees and such provisions are judicially enforceable." *Zeeland Farm Servs., Inc. v. JBL Enters, Inc.*, 555 N.W.2d 733, 736 (Mich. Ct. App. 1996). Here, Plaintiffs assert that they are entitled to reasonable attorneys' fees and costs in connection with this action pursuant to the Equipment Loan Agreement. Specifically, Plaintiffs claim that under Section 4 of the Agreement, Defendants agreed to reimburse Plaintiffs for any legal fees and costs that it was required to incur in order to enforce the Agreement. ECF No. 5-1, PageID.34. The Court finds that this section of the Agreement requires payment of Plaintiffs' attorney fees in the event Plaintiffs initiate an action to enforce the agreement.[1] *Id.* The Court also takes notice that other courts within this District

---

[1] The Court denotes that Plaintiffs allege in their Complaint that they are also entitled to reasonable attorneys' fees and costs pursuant to the Lanham Act, 15 U.S.C. § 1117. ECF No. 18, PageID.82. The Lanham Act permits an award of "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). Given that the Court has determined that Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to the Agreement, it finds that it does not need to

enforce attorneys' fees provisions like the one in the instant matter. *See PSP Franchising v. Dubois*, No. 17-cv-12835, 2013 WL 782901, at *1 n.1 (E.D. Mich. Feb. 28, 2013); *Dunkin' Donuts Franchised Restaurants LLC v. Mr. Omar, Inc.*, No. 06-15078, 2008 WL 2095352, at *2 (E.D. Mich. May 16, 2008).

While Plaintiffs are generally entitled to recover attorneys' fees, costs, interest, and expenses in these matters, recovery may be limited to reasonable attorney fees. *Papo v. Aglo Rests. of San Jose, Inc.*, 386 N.W.2d 177, 183 (Mich. Ct. App. 1986). The Court must therefore determine whether the amounts Plaintiffs seek is reasonable. In their instant Motion, Plaintiffs request permission to submit supplemental briefing regarding the extent of the fees and expenses recoverable. ECF No. 18, PageID.83. Accordingly, Plaintiffs shall advise the Court of their requested attorneys' fees and costs, supported by appropriate evidence such as affidavits and invoices, **no later than November 5, 2020.**

### V. CONCLUSION

For the reasons articulated above, **IT IS SO ORDERED** that Plaintiffs' Motion for Default Judgment [#18] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' conduct violated the terms of the Equipment Loan Agreement between the parties;

---

make a further determination of the nature of Defendants' acts of infringement at this juncture.

**IT IS FURTHER ORDERED** that Defendants, and all other persons in active concert or participation with them, are **HEREBY ORDERED** to immediately and fully comply with the terms and obligations contained in both the Invoice and Section 4 of the Equipment Loan Agreement. Those obligations include, but are not limited to, the return of all Equipment loaned to Defendants at their respective facilities;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a judgment in favor of Plaintiffs and against the corporate Defendants, jointly and severally, in the amount of **$1,274.44** as reflected on Defendants' unpaid Invoice;

**IT IS FURTHER ORDERED** that Defendants, their Members, affiliates, officers, directors, agents, representatives, attorneys, and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or participation therewith, are hereby permanently enjoined from:

(a) using the marks VALVOLINE, V, all stylized variations, and/or any confusingly similar mark or colorable imitation thereof in connection with the promotion, advertisement, display, sale, or distribution of any goods or services offered by any of the Defendants;

(b) performing any act, making any statement, or distributing or displaying any materials that are likely to lead members of the public to believe that Defendants or any services performed by Defendants are associated or

connected with Plaintiffs, or are sold, licensed, sponsored, approved, or authorized by Plaintiffs;

(c) reproducing, displaying, distributing, or creating derivative works from any text, graphics, photographs, videos, or other materials owned by and/or emanating from Plaintiffs or affiliated parties; and

(d) otherwise taking any action likely to cause public confusion, mistake, or deception as to the connection, affiliation, sponsorship, approval, or other association of Defendants' goods or services with Plaintiffs or their goods or services.

**IT IS FURTHER ORDERED** that the corporate Defendants shall pay to Plaintiffs a fine of **$100.00 per day** for each day that Defendants continue to engage in conduct that violates the permanent injunction ordered and detailed *supra*;

**IT IS FURTHER ORDERED** that Defendants shall surrender to Plaintiffs any VALVOLINE signage or other materials used in connection with the acts detailed in Plaintiffs' Complaint within 30 days of the date of this Order;

**IT IS FURTHER ORDERED** that Defendants shall surrender to Plaintiffs the Equipment, which is listed herein as "Exhibit A," within 30 days of the date of this Order;

**IT IS FURTHER ORDERED** that if Defendants fail to comply with the requirements listed *supra* within 30 days of the date of this Order, then a United

States Marshal is authorized to accompany a representative of Plaintiffs to retrieve the Equipment and any Valvoline signage, displays, or similar materials from either or both of Defendants' locations at 13021 Harper Avenue, Detroit, Michigan 48213 and at 17500 East Warren, Detroit, Michigan 48224;

**IT IS FURTHER ORDERED** that, upon receipt of Plaintiffs' supplemental request of attorneys' fees and costs **by November 5, 2020**, the Court shall amend the judgment in favor of Plaintiffs and against the corporate Defendants, jointly and severally, for the reasonable attorneys' fees and costs that Plaintiffs have incurred in enforcing the Agreement and obligations under the Invoice in connection with this dispute.

**IT IS SO ORDERED.**

s/Gershwin A. Drain _____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: October 21, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 21, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

# EXHIBIT A
# EQUIPMENT TO SURRENDER IN ACCORDANCE WITH EQUIPMENT LOAN AGREEMENT

| | | |
|---|---|---|
| 1 | PC400 | TANK – 400 GAL UPRIGHT |
| 2 | PC275 | TANK – 275 GAL STANDARD |
| 16' | P6-RL | HOSE – 3/8" PUSH LOCK AIR |
| 4 | HPM-65B | OIL REEL SD20 1/2" x 50' |
| 1 | G575215D | PUMP APU 1/2 PORTS |
| 3 | CHOSE-R | COIL HOSE RED |
| 2 | CHOSE-B | COIL HOSE BLUE |
| 10' | 8C1TRL | HOSE 1/2" – FT |
| 1 | 647-016 | PUMP, 1050A |
| 4 | 29850 | AIR GAUGE |
| 4 | 255-348 | VALVE METERED SDM5 FLEX |
| 1 | 24C-637 | WALL MOUNTING BRACKET |
| 2 | 24A-935 | KIT, ACCESSORY |
| 2 | 237-893 | 900 PSI VALVE KIT RELIEF |
| 4 | 218-549 | ACCESSORY KIT |
| 2 | 203-876 | PUMP, 5:1 OIL |
| 3 | 19341 | AIRLINE INFLATOR GAUGE |
| 2 | 180-685 | FILLER FAUCET WATER BIBB |
| 3 | 179M | FILL CAPS – 2" |
| 1 | 1740002S | STRAINER, FLOJET |
| 20' | 12C1TRL | HOSE 3/4" – FT |
| 4 | 110-318 | AIR REGULATOR |
| 160' | TUBING | STEEL TUBING 5/8" |
| 180' | SSTUBING | 5/8 OD SS TUBING |
| 2 | RDP-M | ROLLING DRAIN, METAL, LO |
| 1 | VEND | 61489 29G 2HP 150 PSI VERTICAL COMPRESSOR |
| 1 | VEND | 3/4 PIPE |
| 1 | MISC | FITTINGS, VALVES, ETC. |